UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FLETCHER SHERRARD,<br><br>   Plaintiff,<br><br>   v.<br><br>CAROLYN W. COLVIN,<br><br>   Defendant. | Case No. 16-cv-02353-EMC<br><br>**ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; AND GRANTING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**<br><br>Docket Nos. 14, 18 |

Plaintiff Fletcher Sherrard seeks judicial review of the Commissioner's final decision denying his application for supplemental security income benefits under Title XVI of the Social Security Act. Mr. Sherrard moves for summary judgment and seeks an order reversing the Commissioner's decision and ordering the payment of benefits or remanding for further proceedings. Defendant Carolyn W. Colvin, in her capacity as Acting Commissioner of the Social Security Administration ("SSA"), cross-moves for summary judgment and for affirmation of the Commissioner's final decision.

Having considered the parties' briefs and the administrative record submitted in this case, the Court hereby **DENIES** Mr. Sherrard's motion for summary judgment and **GRANTS** the Commissioner's cross-motion.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On August 23, 2012, Mr. Sherrard filed an application for Title XVI benefits, alleging disability as of February 1, 2010.[1] *See* AR 190-99. According to Mr. Sherrard, he stopped

---

[1] Mr. Sherrard previously filed applications for Title II or Title XVI benefits in 1992, 1994, and 2003, but those applications were denied, and Mr. Sherrard did not contest those decisions. *See* AR 13.

working as of that date because of depression and a bad left ankle. *See* AR 246.

The SSA denied Mr. Sherrard's claim on January 23, 2013, and then his request for reconsideration on September 26, 2013. *See* AR 108-11, 116-20. Mr. Sherrard thereafter requested a hearing before an Administrative Law Judge ("ALJ"). *See* AR 121-23. Shortly before the hearing, Mr. Sherrard amended his onset-of-disability date to August 23, 2012, *i.e.*, the date he filed his application for benefits. *See* AR 306. In addition, he asserted additional impairments and symptoms of Bell's palsy, migraine headaches, chronic cough, degenerative joint disease of a shoulder, a depressive disorder, and auditory hallucinations. *See* AR 307.

A hearing was held before ALJ Katherine Loo on November 21, 2014. *See* AR 13. On March 12, 2015, ALJ Loo issued a decision unfavorable to Mr. Sherrard, concluding that he was not disabled since August 23, 2012. *See* AR 10-36. In reaching this conclusion, the ALJ applied the five-step sequential evaluation process for determining whether an individual is disabled within the meaning of the Social Security Act, *see* AR 14; 20 C.F.R. § 404.1520(a)(4):

> (1) whether the claimant is "doing substantial gainful activity";
>
> (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months;
>
> (3) whether the impairment "meets or equals" one of the listings in the regulations;
>
> (4) whether, given the claimant's "residual functional capacity," the claimant can still do his or her "past relevant work"; and
>
> (5) whether the claimant "can make an adjustment to other work."

The claimant bears the burden of proof at steps one through four. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). "[T]he burden of proof shifts to the [Commissioner] at step five to show that the claimant can do other kinds of work." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 689 (9th Cir. 2009) (internal quotation marks and citations omitted).

In the instant case, the ALJ found, at step one, that Mr. Sherrard had not engaged in substantial gainful activity since August 23, 2012. *See* AR 15.

At step two, the ALJ found Mr. Sherrard had the following severe impairments: "obesity, remote history of left ankle fracture status-post open reduction-internal fixation, polysubstance

2

dependence in self-reported remission, and an affective disorder." AR 16. The ALJ rejected Mr. Sherrard's assertion that he had other severe impairments, such as a cognitive disorder, but emphasized that "[a]ll impairments, . . . regardless of severity, as well as the claimant's self-reported limitations and subjective pain, have been considered in combination in assessing the claimant's residual functional capacity." AR 16.

At step three, the ALJ found that Mr. Sherrard's physical and mental impairments did not meet or medically equal the severity of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Notably, with respect to physical impairments, ALJ Loo concluded that the severity of Mr. Sherrard's impairments did not meet or medically equal the criteria of Listing 1.02A, which covers a major dysfunction of a joint such as an ankle. *See* AR 17.

At step four, ALJ Loo found that Mr. Sherrard's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms and limitations" but found Mr. Sherrard's statements regarding the "intensity, persistence and limiting effects of these symptoms" not credible. AR 22-25, 28-29. The ALJ then determined that, based on the evidence of record, Mr. Sherrard had the physical residual functional capacity ("RFC") required to stand and walk two hours per day; needed a cane to walk and balance; could lift and carry 20 pounds occasionally and 10 pounds frequently; could occasionally climb ramps and stairs; could occasionally stoop and kneel; and could never crouch or crawl. *See* AR 21. The ALJ further determined that, with respect to Mr. Sherrard's mental RFC, he could engage in simple, repetitive tasks and maintain attention and concentration in two-hour increments, and should work in an environment requiring no public contact and up to occasional interaction with supervisors and co-workers. *See* AR 21.

Finally, at step five, the ALJ concluded that Mr. Sherrard had no past relevant work, but nevertheless could work as a small product assembler, cleaner-polisher, and hand packager/inspector. *See* AR 30. On that basis, ALJ Loo concluded that Mr. Sherrard was not disabled as defined by the Social Security Act since August 23, 2012. *See* AR 30-31.

Subsequently, Mr. Sherrard filed a request for review of the unfavorable ALJ decision.

*See* AR 9. The Appeals Council denied Mr. Sherrard's request for review on March 22, 2016.[2] *See* AR 1. Mr. Sherrard thereafter filed the instant case, seeking judicial review of the agency decision.

## II. STANDARD OF REVIEW

After a Commissioner has issued a final decision, a petitioner may seek judicial review of that decision by a district court. *See* 42 U.S.C. § 405(g). District courts "shall have the power to enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing." *Id*. Congress prioritizes agency expertise and discretion, and limits review of agency decisions by the courts. *See Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 621 (1966) ("Congress places a premium upon agency expertise, and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing courts to substitute their discretion for that of the agency."). The Commissioner's decision will only be disturbed "'if it is not supported by substantial evidence or is based on legal error.'" *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Molina*, 674 F.3d at 1110-11 (internal quotation marks omitted). Such evidence must be "more than a mere scintilla," but less than a preponderance. *Id*. If the evidence supports more than one rational interpretation, the Court must uphold the ALJ's findings "if they are supported by inferences reasonably drawn from the record." *Id*. "In assessing whether a finding is supported by substantial evidence, we must consider the record as a whole." *Howard v. Heckler*, 782 F.2d 1484, 1487 (9th Cir. 1986).

## III. DISCUSSION

In the instant case, Mr. Sherrard raises several arguments to challenge the ALJ's determination that he has not been disabled since August 23, 2012. Those arguments fall largely into four categories:

---

[2] In its decision, the Appeals Council noted that, on April 30, 2015, Mr. Sherrard filed another application for benefits and that this time he was found to be disabled, but only as of April 30, 2015. *See* AR 2.

4

- that the ALJ erred in concluding that Mr. Sherrard did not suffer from a severe cognitive disorder;
- that the ALJ erred in concluding that Mr. Sherrard did not meet Listing 1.02A (major dysfunction of a joint);
- that the ALJ erred in rejecting Mr. Sherrard's credibility; and
- that the ALJ erred in assessing what work Mr. Sherrard could perform based on his RFC.

The Court addresses each of these arguments below.

A.   <u>Cognitive Disorder</u>

As noted above, at step two of the five-step sequential process, an ALJ assesses whether a claimant has a severe medically determinable physical or mental impairment or combination of impairments. In the instant case, ALJ Loo, in assessing Mr. Sherrard's mental impairments, rejected his claim that he suffered from a cognitive disorder (although she did conclude that he had other severe mental impairments, in particular, an affective disorder and polysubstance dependent in self-reported remission). *See* AR 16. In so ruling, ALJ Loo rejected the diagnosis of cognitive disorder rendered by an examining physician, Dr. Kohbod, and credited instead the opinions of two treating physicians (Dr. Bruch and Dr. Joglekar), one examining physician (Dr. Dixit), two nonexamining physicians (Dr. King and Dr. Brode), and two other non-medical sources (social worker Mr. Ralney and SSA claims representative Mr. Boone). *See* AR 25-28. In his motion, Mr. Sherrard contends that the ALJ erred in according little weight to Dr. Kohbod's opinion, which affected not only the ALJ's step-two analysis but also, implicitly, her analysis of the remaining steps. The Court disagrees.

The Ninth Circuit makes distinctions among three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "A treating physician's opinion is entitled to substantial weight." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and citation omitted). The opinion of an examining physician is entitled

5

to greater weight than the opinion of non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990). If the ALJ rejects a treating or examining physician's opinion that is contradicted by another doctor, she must provide specific, legitimate reasons based on substantial evidence in the record. *See Valentine*, 574 F.3d at 692.

In October 2014, psychologist Dr. Kohbod examined and evaluated Mr. Sherrard at the request of his representative and diagnosed Mr. Sherrard with cognitive disorder. *See* AR 872. Based on her findings, Dr. Kohbod opined that Mr. Sherrard "could be classified as disabled" because of his "severe cognitive impairments in the areas of planning, knowledge acquisition, memory, and visio-spatial organization." AR 878. Dr. Kohbod is alone in her diagnosis of disabling cognitive disorder. ALJ Loo accorded the opinion of Dr. Kohbod "little weight" because "the opinion is not well supported by medically acceptable clinical diagnostic techniques and is exceptionally inconsistent with other substantial evidence in the record." AR 28.

Mr. Sherrard challenge to the ALJ's reasoning is not without some basis. The ALJ found that Dr. Kohbod's opinion "is not well supported by medically acceptable clinical diagnostic techniques." AR 878. However, the report from Dr. Kohbod reflects that various tests were administered on Mr. Sherrard, including: Wechsler Adult Intelligence Scale, General Ability Measure for Adults, Trail Making Test, Rey Complex Figure, and Beck Anxiety Inventory. *See* AR 873. Dr. Kohbod also clinically observed Mr. Sherrard and conducted a mental status examination. *See* AR 875. Although it appears that one of the administered tests was not completed, *see* AR 876 (noting that "the WAIS was discontinued and a differed [sic] IQ test administered."), the ALJ did not explain how those tests that were successfully administered failed to support Dr. Kohbod's opinion. Based on the tests that were administered successfully, Dr. Kohbod concluded that Mr. Sherrard "has a serious cognitive disorder, but the extent and duration are unknown." AR 878.

The ALJ, however, rejected Dr. Kohbod's opinion based primarily on the fact that Dr. Kohbod's opinion conflicted with substantial evidence in the record, such as the opinions of multiple other physicians, including Mr. Sherrard's treating physicians, as well as other evidence in the record. Because there is other substantial evidence in the record on which the ALJ relied in

according less weight to Dr. Kohbod's opinion, the harmless error standard applies. *See Rusten v. Comm'r of Soc. Sec. Admin.*, 468 F. App'x 717, 720 (9th Cir. 2012) (finding error harmless because "[e]ven if the ALJ had given [examining physician's] medical evaluation more weight, substantial evidence would still support the ALJ's finding of no disability[.]"); *see also Molina*, 674 F.3d at 1115 (9th Cir. 2012) ("[I]n each case we look at the record as a whole to determine whether the error alters the outcome of the case.").

In particular, ALJ Loo accorded greater weight to the opinions of two treating physicians, one examining physician, two consulting physicians, and two other non-medical sources. All of these sources acknowledged some form of depression and associated limitations, but none diagnosed Mr. Sherrard with disabling cognitive disorder or suggested that he had a cognitive disorder of any real severity. More specifically:

- In January 2011, treating physicians Dr. Bruch and Dr. Joglekar diagnosed Mr. Sherrard with depressive disorder and polysubstance dependence. *See* AR 27; AR 323-25. Dr. Bruch acknowledged that Mr. Sherrard's "[j]udgment and insight are limited" because, even though he was voluntarily seeking treatment for depression, he "continues to use substances despite negative consequences, including negative legal consequences." AR 322-23. However, in assessing Mr. Sherrard's perception, Dr. Bruch noted, "Thought process is logical and linear," and, in assessing his cognitive function, Dr. Bruch observed, "Alert and oriented." AR 322. Dr. Joglekar echoed Dr. Bruch's comments, stating that Mr. Sherrard's thought process was "logical and linear" and that his cognitive function was "[a]lert and oriented." AR 325. Dr. Joglekar further noted that Mr. Sherrard was "[a]ble to formulate a plan for self care, including providing food, clothing and shelter." AR 325.[3] Neither doctor found a cognitive disorder.

---

[3] It appears that Dr. Bruch and Dr. Joglekar were only one-time treating physicians, *i.e.*, Mr. Sherrard was not a regular patient of theirs. Social Security regulations instruct adjudicators to afford greater weight to those treating physicians who have a continuity of dealings with a claimant. *See* 20 C.F.R. § 404.1527 ("Generally, the longer a treating source has treated you . . . the more weight we will give to the source's medical opinion."). Nevertheless, both doctors are still considered treating physicians and not simply examining physicians.

7

- In December 2012, an examining physician, Dr. Dixit met with Mr. Sherrard at the request of the state agency and diagnosed him with depressive disorder. *See* AR 27; AR 454. Other than possible mild to moderate difficulty dealing with the public due to his anxiety, Dr. Dixit did not assess any significant limitations from a mental impairment. *See* AR 453. Dr. Dixit noted, *inter alia*, that Mr. Sherrard's "speech was spontaneous, clear, and coherent" and that "[t]here was no evidence of a formal thought disorder." AR 453. Dr. Dixit further noted that Mr. Sherrard was able: "to remember 3 out of 3 objects immediately and 3 out of 3 objects in 3 minutes"; to recite the name of the president of the United States, the governor of California, and the capital of California; "to perform simple mathematical problems," including multiplication of two single digits, serial 3's, and "subtract[ing] 7 serially from 100"; "to follow a 3-step command and recall five digits forward and backward"; "to correctly spell the word WORLD forward and backward"; "to state the similarities and differences between apples and oranges"; and "to interpret the meaning of a common English proverb." AR 453.

- In January 2013 and September 2013, two state agency psychological consultants, Dr. King and Dr. Brode, assessed Mr. Sherrard's medical records and found severe impairments of substance addiction disorder and an affective disorder caused moderate difficulties in maintaining social functioning, concentration, persistence or pace, but no restriction of activities of daily living. AR 28; AR at 78-79, 93-94. Dr. Brode found that Mr. Sherrard was "grossly cognitively intact." AR 93. Neither doctor found a cognitive disorder.

- In August 2012, social worker Mr. Ralney met with and provisionally diagnosed Mr. Sherrard with depression, not otherwise specified, and polysubstance abuse. *See* AR 27; AR 829. Mr. Ralney observed that Mr. Sherrard's "thought process was linear and organized." AR 829.

- In August 2012, SSA claims representative Ms. Boone met with and interviewed Mr. Sherrard. *See* AR 28; AR 258-59. She indicated, *inter alia*, that she did not

observe or perceive that Mr. Sherrard had difficulty with reading, understanding, coherency, and concentration.[4]

The ALJ was required to give specific and legitimate reasons for rejecting Dr. Kohbod's assessment of a disabling cognitive disorder. *See Magallanes v. Bowen*, 881 F.2d 747 (9th Cir. 1989). All of the above, including the contrary opinions of treating physicians Dr. Bruch and Dr. Joglekar, examining psychologist Dr. Dixit, and the two state agency psychological consultants, Dr. King and Dr. Brode, constitute specific, legitimate, and substantial evidence on which ALJ Loo could reasonably rely in according less weight to Dr. Kohbod's opinion. *See Orn v. Astrue*, 495 F.3d 625, 632-33 (9th Cir. 2007) (the ALJ must give "controlling weight" to a treating doctor's opinion that is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record."); *see also Tonapetyan v. Halter*, 242 F.3d 1144 (9th Cir. 2001) (an examining source's "opinion alone constitutes substantial evidence, because it rests on his own independent examination of [claimant]"); *Magallanes*, 881 F.2d at 752 (holding that the opinion of a non-examining physician may constitute "substantial evidence" when it is consistent with other independent evidence in the record); *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld.").

Mr. Sherrard protests that step two is simply a "de minimis screening device to dispose of groundless claims," *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996), such that the ALJ should have deemed the cognitive disorder diagnosed by Dr. Kohbod a severe impairment. *See id.* (adding that "[a]n impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'"). But even if ALJ Loo technically should have considered cognitive disorder at step two, her error was harmless, *see Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050,

---

[4] The Court acknowledges that the opinions of social worker Mr. Ralney and the SSA Claims Representative Boone must be afforded less weight because they are considered "other sources" under the Social Security regulations. C.F.R. § 404.1513(d)(3); *see also Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010) (noting that the regulations treat "[p]ublic and private social welfare agency personnel" as "other sources").

1055 (9th Cir. 2006) (defining harmless error as such error that is "inconsequential to the ultimate nondisability determination"), because ALJ Loo specifically noted that "[a]ll impairments, . . . regardless of severity, as well as the claimant's self-reported limitations and subjective pain, have been considered in combination in assessing the claimant's residual functional capacity" at step four. The lack of disabling cognitive impairment found by the ALJ based on the evidence contrary to the assessment of Dr. Kohbod informed the ALJ's step four analysis discussed below. AR 16; *see also* 42 U.S.C. § 423(d)(2)(B) (requiring consideration of the "combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of [sufficient] severity").

B. Listing 1.02A: Major Dysfunction of a Joint

At step three of the five-step sequential process, an ALJ evaluates whether an impairment meets or equals one of the listings in the regulations, in which case the claimant is deemed disabled. Here, Mr. Sherrard contends that he had a physical impairment to his ankle that met or equaled Listing 1.02A, which is disability on the basis of a major dysfunction of a joint. *See* 17; 20 C.F.R. Pt. 404, Subpt. P, App. 1. § 1.02A. Mr. Sherrard points out that Dr. Rivero, a physician who examined him in November 2014 at the request of his representative, concluded that Mr. Sherrard met this listing. *See* AR 865, 871. ALJ Loo rejected this opinion of Dr. Rivero, but Mr. Sherrard maintains that this was error. Alternatively, Mr. Sherrard argues that, at the very least, the fact of Dr. Rivero's opinion should have prompted the ALJ to consult with another medical expert to determine whether his impairment met or equaled Listing 1.02A. The Court disagrees with both arguments.

1. Dr. Rivero

Listing 1.02, as noted above, covers a disability on the basis of a major dysfunction of a joint. Major dysfunction of a joint is described as follows:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:

10

> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1.

Listing 1.00B2b in turn provides as follows:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of *both* upper extremities. (Listing 1.05C is an exception to this general definition because the individual has the use of only one upper extremity due to amputation of a hand.)
>
> (2) To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, *two crutches or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

*Id.*

Here, even if the Court were to credit Dr. Rivero's medical opinion, they do not support her ultimate conclusion that Mr. Sherrard met Listing 1.02A. In her report, Dr. Rivero observed, *inter alia*, that Mr. Sherrard used a single point cane to ambulate, *see* AR 871; therefore, he did not meet the definition of inability to ambulate effectively which references an assistive device that limits the functioning of *both* upper extremities. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.") (emphasis in original); *see also Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013) ("Listed impairments are purposefully set at a high level of severity because 'the listings were designed to operate as a presumption of disability that makes further

inquiry unnecessary.'"). It is also worth noting that, in her report, Dr. Rivero stated that Mr. Sherrard "was able to walk to and from the examination room without difficulty," albeit "slowly gait antalgic" and "limp[ing] on the L[eft] foot." AR 867. Such an observation does not support a finding of "an extreme limitation of the ability to walk." 20 C.F.R. Pt. 404, Subpt. P, App. 1.

Moreover, ALJ Loo pointed to other specific, legitimate, and substantial evidence in the record that contradicted Dr. Rivero's assessment that Mr. Sherrard was physically disabled. *See Magallanes*, 881 F.2d at 752. The ALJ provides a detailed account of Mr. Sherrard's medical history from 1993 to 2014. Focusing on medical evidence from the years 2012-2014, the dates nearest to the alleged onset of disability on August 23, 2012, the ALJ documented at least nine separate observations of normal or steady gait by ER staff in 2012 and one observation of steady gate in 2014.[5] AR at 24 (citing AR 403, 404, 411); AR 25 (citing AR 421, 432, 437, 442, 573, 589); AR 26 (citing AR 796). ALJ Loo also relied on the opinions of two State agency physicians, Dr. Vorhies and Dr. Blando, who reviewed Mr. Sherrard's medical records in January and September 2013 and determined that he could engage in medium-level exertional activity. *See* AR 25-26 (citing AR 80, 96-97). Based on this evidence, ALJ Loo rejected Dr. Rivero's conclusion that Mr. Sherrard could not ambulate effectively. AR at 28. Though Mr. Sherrard points to some contrary evidence in the record, the ALJ is responsible for resolving conflicts in medical testimony. *See Magallanes*, 881 F.2d at 750. And if the evidence supports more than one rational interpretation, the Court must uphold the ALJ's findings. *See id*. Here, the multiple observations of normal or steady gate by ER staff and the opinions of two state agency physicians constitute specific, legitimate, and substantial evidence which the ALJ could reasonably rely in according Dr. Rivero's opinion "little weight." *See id.* at 752 (finding that "[t]he reports of consultative physicians called in by the Secretary may serve as substantial evidence" when consistent with other evidence in the record).

---

[5] It appears that nurses and physician assistants made these observations. The Court acknowledges that the opinions of nurses and physician's assistants are defined as "other medical sources," § 404.1513(d)(1) and, therefore, entitled to reduced weight. *See Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

12

### 2. Independent Medical Expert

Mr. Sherrard argues that, at the very least, Dr. Rivero's opinion should have prompted to ALJ to consult an independent medical expert and further develop the record. That argument is without merit. The duty to develop the record is triggered "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001). The contrary opinion of a physician does not itself mean that there is ambiguous evidence that triggers a duty to develop the record further. *See Freeman v. Colvin*, No. 14-17151, 2016 WL 6123538, at *1 (9th Cir. Oct. 20, 2016) ("conflict between medical opinions alone does not render evidence ambiguous"). Here, the ALJ properly discounted Dr. Rivero's overall determination that Mr. Sherrard had a disabling ankle injury, which was a proper question for the ALJ to determine. *See McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2010) ("The law reserves the disability determination to the Commissioner.") (internal quotation marks and citation omitted). The ALJ accorded little weight to the opinion of Dr. Rivero based on substantial evidence in the record, including at least ten separate observations of steady or normal gait by ER staff and crediting the opinion of two consulting physicians, Dr. Vorhies and Dr. Blando, who determined that Mr. Sherrard did not meet or equal Listing 1.02A. Admittedly, it does appear that Mr. Sherrard's ankle impairments may have worsened in 2013. *See* AR 787 (noting increased edema on left ankle, 7/10 pain level on ankle); AR 789 (observing "no apparent distress" but also noting "ambulating with a limp"); AR 867 (stating that Mr. Sherrard "limps on the L[eft] foot and walks with a cane."). But there is also evidence from 2014 that Mr. Sherrard's impairments were not a problem or at least not overly limiting. *See* AR 796 (observing in April 2014 ambulating with a steady gait and "no apparent distress noted"). Moreover, the bottom line is that, even if there are two rational interpretations of the evidence, the ALJ's decision must be upheld. *See Gallant*, 753 F.2d at 1453 ("Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld."). Because all of the above, including detailed examination of Mr. Sherrard's medical records from 1993 to 2014 and the opinions of consulting physicians Dr. Vorhies and Dr. Blando, constitutes substantial evidence on which the ALJ could have reasonably relied in making her determination, ALJ Loo

13

1  did not have a duty to further develop the record. *See Mayes*, 276 F.3d at 460 (finding no duty to
2  develop record where there was "substantial evidence" supporting the ALJ's decision that the
3  plaintiff was not disabled.).

C. <u>Credibility</u>

Next, Mr. Sherrard challenges the ALJ's determination that Mr. Sherrard's testimony as to the intensity, persistence, and limiting effects of his symptom was not credible. The Ninth Circuit relies on a two-step process for evaluating the credibility of a claimant's testimony about the severity and limiting effect of the stated symptoms. *See Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 503 F.3d 1028, 1035-36 (9th Cir. 2007)).[6] "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 503 F.3d at 1036 (citation and quotation marks omitted). Second, "[o]nce the claimant produces medical evidence of an underlying impairment, the

---

[6] Although this second step has previously been termed a credibility determination, pursuant to Social Security Ruling ("SSR") 16-3p, the ALJ is no longer tasked with making an overarching credibility determination. *See* SSR 16-3p; Titles II and XVI: Evaluation of Symptoms in Disability Claims, 81 FR 14166-01 ("We are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term. In doing so, we clarify that subjective symptom evaluation is not an examination of an individual's *character*.") (emphasis added). SSR 16-3p is effective as of March 28, 2016 and replaces SSR 96-7p. Under SSR 16-3p, ALJs are instructed not to "assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation." *Id.* Rather, ALJs are to "focus on whether . . . the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities[.]" SSR 16-3p became effective after the ALJ issued her opinion on March 12, 2015 and the Appeals Council affirmed on March 22, 2016. There is no binding authority applying SSR 16-3p retroactively and the parties do not raise this issue. *Compare Sinczewski v. Colvin*, No. CV 15-09043-KES, 2016 WL 6583594, at *8 (C.D. Cal. Nov. 7, 2016), *judgment entered,* No. CV 15-09043-KES, 2016 WL 6584890 (C.D. Cal. Nov. 7, 2016) (declining to apply SSR 16-3p to an ALJ decision issued prior to the effective date), *with Mesecher v. Colvin*, No. 6:14-CV-01578-JE, 2016 WL 6666800, at *4 (D. Or. Nov. 10, 2016) ("retroactive application of the new SSR is appropriate."). The Seventh Circuit Court of Appeals, the only circuit court that has addressed this issue to date, favors applying SSR 16-3p retroactively. *See Cole v. Colvin*, No. 15-3883, 2016 U.S. App. LEXIS 13559 (7th Cir. July 26, 2016). SSR 16-3p likely applies retroactively because it is a simply a clarification of an existing rule rather than a new rule. *See States v. Donaghe*, 50 F.3d 608, 612 (9th Cir. 1994) ("Normally, when an amendment is deemed clarifying rather than substantive, it is applied retroactively."). However, this Court need not decide the issue since the change in policy does not affect the ultimate outcome of this case. As explained in further detail below, the Court finds that the ALJ identified three proper reasons for discrediting Mr. Sherrard's symptom testimony that appropriately address the intensity and persistence of his symptoms rather than impermissibly focus on his overall character.

Commissioner may not discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (internal quotation marks and citation omitted). Absent evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Smolen*, 80 F.3d at 1281. "If the ALJ's credibility finding is supported by substantial evidence in the record, [a court] may not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).

The Court agrees with Mr. Sherrard that the ALJ's assessment of his symptom testimony is less than perfect. The ALJ discredited Mr. Sherrard's pain testimony, in part, because "the record reflects no treatment involving knees or shoulders, not to mention a mental impairment." AR 29. However, Mr. Sherrard sought treatment for depression, *see* AR 322, 328, 824, 825, and for right shoulder pain. *See* AR 350-51, 436.[7]

The ALJ, however, identified three additional reasons for discounting Mr. Sherrard's symptom testimony; these reasons rise to the level of specific, clear and convincing reasons. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195–97 (9th Cir. 2004) (applying harmless error standard where one of the ALJ's several reasons supporting an adverse credibility finding was held invalid). First, the ALJ found that objective medical evidence did not support Mr. Sherrard's allegations of disabling symptoms. *See* AR 22; *see also Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999) (conflict between subjective complaints and objective medical evidence in the record is a "specific and substantial" reason that undermines claimant's credibility though the ALJ may not discredit the claimant's symptom testimony on this basis alone). Specifically, as mentioned above, ALJ Loo noted contradictions between Mr. Sherrard's allegations of disabling ankle pain and at least ten occasions from 2012-2014 where he was seen ambulating with a steady or normal gait. And, as noted above, the ALJ also noted contradictions

---

[7] The ALJ found that Mr. Sherrard provided conflicting information regarding his education level. *See* AR 29. Mr. Sherrard reported at some points that he graduated from high school (AR at 452, 874) and at others that he went up to the 11th or 12th grade (AR at 247, 43). This inconsistency about his education level is a minor issue, especially as it is not directly relevant to Mr. Sherrard's pain testimony.

between Mr. Sherrard's allegation of disabling cognitive disorder and the medical opinions of two treating physicians, an examining physician, and two nonexamining physicians, all of whom acknowledged some sort of mental limitation but none of whom diagnosed Mr. Sherrard with severe cognitive disorder.

Second, ALJ Loo noted that Mr. Sherrard failed to follow-up often on recommendations made by medical practitioners. *See* AR 29. Failure to follow prescribed treatment is a specific credibility consideration as it casts some doubt on the claimant's pain testimony. *See Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, the ALJ noted evidence of failure to follow up at the community clinic, podiatrist, or orthopedist for ankle pain and failure to follow up with a recommended CT scan, despite his allegations of disabling ankle pain. *See* AR 392, 397. Mr. Sherrard suggests that depression and his limited income prevented him from seeking treatment. *See* Mot. at 17. However, the ALJ also noted Mr. Sherrard's many documented visits to the ER to collect painkillers or seek treatment for other symptoms, which undermines these arguments. *See* AR 29, 376, 814, 812, 811, 536, 421, 426, 431.

Third, ALJ Loo noted Mr. Sherrard's poor work history "which raises a question as to whether the claimant's continuing unemployment is actually due to medical impairments." AR 29. She also noted Mr. Sherrard's non-substantial work activity after the alleged disability onset date, which she found "indicate[s] that the claimant's daily activities have been, at least at times, somewhat greater than the claimant has generally reported." AR 29. Both a claimant's work history and level of daily activity are specific credibility considerations. *See Thomas v. Barnhart,* 278 F.3d 947, 959 (9th Cir. 2002); *see also Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir. 1990).[8] Here, both are clear and convincing reasons to discredit Mr. Sherrard's symptom testimony because they undermine a claimant's allegation that he is unable to work because of the onset of his disability. Mr. Sherrard protests that the reason he has not worked is because a lengthy history of incarceration has hindered his job prospects out of custody. While a criminal

---

[8] Prior work history is arguably closer to an impermissible character assessment under SSR 16-3p. *See* note 6, *supra*. However, such a consideration appears to still be valid under 20 C.F.R. § 416.929(c)(3) ("[w]e will consider all of the evidence presented, including information about your prior work record").

16

record may have influenced an employer's decision to not hire Mr. Sherrard, the ALJ did not need to consider whether Mr. Sherrard could actually obtain work because of his incarceration history. *See Hunter v. Astrue*, 254 F. App'x 604, 606–07 (9th Cir. 2007) (finding that the ALJ had correctly refused to consider whether claimant could actually obtain work because of his incarceration history since "[t]he Social Security Act is not an unemployment compensation act, but an act to compensate those who cannot work because of their medical disability"); *see also Sorenson v. Weinberger*, 514 F.2d 1112, 1117 (9th Cir. 1975) (per curiam) (holding that the fact that disability claimant could not obtain work because his doctor had not ordered his release from disability and thus precluding him from being able to obtain employment did not require finding that claimant was disabled).

Despite the ALJ's less than perfect assessment of Mr. Sherrard's symptom testimony, the ALJ provided three additional, record-supported reasons, as discussed above, which rise to the level of specific, clear, and convincing evidence undermining Mr. Sherrard's credibility. Because these reasons support the ALJ's credibility determination, this Court does not find that the ALJ's misstatement of Mr. Sherrard's treatment history affected the ALJ's conclusion or requires remand. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004) (finding "harmless error" in the ALJ's credibility determination where the ALJ made incorrect assumptions about the plaintiff's daily activities since there was other substantial evidence supporting the ALJ's decision.).

D.  Vocational Testimony

Finally, Mr. Sherrard argues that the ALJ erred by finding that he could do jobs that are incompatible with his RFC, but the Court disagrees.

At step five of the sequential evaluation process, the Commissioner bears the burden of proving that the claimant can perform "other jobs that exist in substantial numbers in the national economy." *Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001). The ALJ can rely on a vocational expert's testimony so long as the expert testifies in response to a hypothetical question setting forth all of the limitations that the ALJ found. *See Valentine*, 574 F.3d at 690. At step four, the ALJ had found that Mr. Sherrard could work in an environment requiring no public

17

contact and up to occasional interaction with supervisors and co-workers. *See* AR 21. After presenting these limitations to the vocational expert, the expert testified that a hypothetical individual could perform the occupations of small products assembler, cleaner/polisher, and inspector/hand packager. *See* AR 67-68. When Mr. Sherrard's attorney asked whether an individual who "had an impairment *working in close proximity* to others on a consistent basis" could perform the occupations, the vocational expert testified that those limitations would preclude an individual from performing any of these jobs. AR 69 (emphasis added).

Mr. Sherrard argues that the ALJ incorrectly relied on the assessment of the vocational expert because he contends that the occupations that the vocational expert identified require being in close proximity to co-workers. *See* Mot. at 14. But, the ALJ did not find that Mr. Sherrard could not work in close proximity to co-workers. Rather, the ALJ found that Mr. Sherrard could work in an environment requiring "up to occasional interaction with supervisors and co-workers." AR at 21. Therefore, the ALJ properly considered Mr. Sherrard's limitations, posed these limitations to the vocational expert, and concluded without error that Mr. Sherrard was not disabled. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995), *as amended* (Oct. 23, 1995).

## IV.    CONCLUSION

For the foregoing reasons, the Court denies Mr. Sherrard's motion and grants the Commissioner's. The Clerk of the Court is ordered to enter judgment in accordance with this opinion and close the file in this case.

This order disposes of Docket Nos. 14 and 18.

**IT IS SO ORDERED**.

Dated: March 6, 2017

_____
EDWARD M. CHEN
United States District Judge